1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

Hardeep Singh,
Petitioner
-vs-
Chad Wolf, et al.,
Respondents.

CV-20-1169-PHX-SPL (JFM)

**Report & Recommendation**
**on Motion to Dismiss/Transfer**

Petitioner has filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 (Doc. 1) challenging the denial of his asylum application. On July 20, 2020, Respondents filed a Motion to Dismiss (or transfer) (Doc. 19). The motion is a dispositive motion, and accordingly, the undersigned makes the following proposed findings of fact, report, and recommendation pursuant to Rule 72(b), Federal Rules of Civil Procedure, 28 U.S.C. § 636(b) and Rule 72.2(a)(2), Local Rules of Civil Procedure.

## I. RELEVANT FACTUAL & PROCEDURAL BACKGROUND
## A. FACTUAL AND ADMINISTRATIVE BACKGROUND

Petitioner is a 26-year-old Indian citizen who entered the U.S. near Mexico on or about June 24, 2019 without inspection. (Pet. Exh. A, Record of Determination, Doc. 1-1, at 6, 11, and Determination of Inadmissibility, Doc. 1-1 at 25.) Petitioner sought asylum, and while detained at the facilities in Eloy, Arizona, was interviewed by an Asylum Officer, who denied his application on August 14, 2019. (*Id.*) Petitioner sought review by an immigration judge who affirmed. (Petition, Doc. 1 at 11; Motion, Doc. 18 at 2; Service Order, Doc. 12 at 2.) Petitioner was transferred out of the state of Arizona on September 29, 2019 and is currently held at the direction of the Department of Homeland Security at Adams County Detention Center in Natchez, MS, where Respondent Shawn Gillis is the

warden.  (Motion, Doc. 18 at 2; Mot. Exh. A, Record of Persons Transferred.)

## B.  PRESENT FEDERAL HABEAS PROCEEDINGS

**Petition** - Petitioner commenced the current case by filing through counsel his Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 on June 12, 2020 (Doc. 1).

In Grounds One through Three, Petitioner claims that his credible fear proceedings denied him a fair and meaningful opportunity to apply for relief in violation of the governing statute, the implementing regulations, and the Due Process Clause of the Fifth Amendment. Petitioner alleges the asylum officer failed to employ the required non-adversarial procedures when conducting his credible fear interview, improperly allocated the burden of proof, and misapplied the relevant regulations and binding case law when evaluating his credible fear claim. In Ground Four, Petitioner requests attorney's fees and costs under the Equal Access to Justice Act.  Petitioner asserts that this Court has habeas corpus jurisdiction to review his challenges pursuant to the Ninth Circuit's decision in *Thuraissigiam v. U.S. Dep't of Homeland Sec.*, 917 F.3d 1097 (9th Cir. 2019), *rev'd and remanded sub nom. Dep't of Homeland Sec. v. Thuraissigiam*, 140 S. Ct. 1959 (June 25, 2020).

In his demand for relief, Petitioner asks the Court to: (1) determine that his expedited removal order violated his statutory, regulatory, and constitutional rights and, as a result, he is being detained in violation of the law; (2) vacate the expedited removal order; and (3) order that he be provided a new, meaningful opportunity to apply for asylum and other relief from removal. (Doc. 1 at 24-25.)

Petitioner has named as respondents Acting DHS Secretary Chad Wolf, United States Attorney General William Barr, Acting United States Immigration and Customs Enforcement (ICE) Director Matthew T. Albence, Acting USCIS Director Kenneth Cuccinelli, USCIS New Orleans Field Office Director Stanley Crockett, and Adams County Correctional Center Warden Shawn Gillis.  The Court deferred addressing whether

the proper respondents had been named, and noted:

> Under the rationale articulated in *Armentero, infra*, and in the absence of authority addressing who is the proper respondent in immigration habeas corpus proceedings under § 2241, the Court will not dismiss Respondents or the Petition for failure to name a proper respondent at this stage of the proceedings. *See Armentero v. INS*, 340 F.3d 1058, 1071- 73 (9th Cir. 2003) (finding the DHS Secretary and the Attorney General were proper respondents), *withdrawn*, 382 F.3d 1153 (9th Cir. 2004) (order); *see also Rumsfeld v. Padilla*, 542 U.S. 426, 435 n.8 (2004) (declining to resolve whether the Attorney General is a proper respondent in an immigration habeas corpus petition).

(Doc. 7 at 2, n.2.)  And, although noting its occurrence, the Court's service order did not address the effect of Petitioner's physical location at the time of the Petition.

The Order granted the Emergency Motion to Stay Removal (Doc. 2) and enjoined Respondents from removing Petitioner.  (Doc. 7 at 3-4.)

**Motion** - Respondents sought (Doc. 15) and obtained (Doc. 17) leave to file a dispositive motion in lieu of a response to the Petition.

On July, 2020, Respondents filed the instant Motion (Doc. 18) arguing that: (1) in light of the recent decision in *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. ____, 140 S. Ct. 1959 (2020) ("*Thuraissigiam II*") this Court lacks subject matter jurisdiction over the Petition; and (2) the District of Arizona is not the proper forum because Petitioner was no longer detained in the District of Arizona at the time of his Petition. With regard to the latter, Respondents argue that **territorial jurisdiction** lies in the district of confinement, citing *Rumsfield v. Padilla*, 542 U.S. 426, 443 (2004).   Respondents alternatively argue that **venue** is proper in the district of confinement, citing *Braden v. 30th Judicial Circuit Court of Kentucky*, 410 U.S. 484, 493-94 (1973).  Respondents argue that either dismissal or transfer to the proper district is appropriate, citing 28 U.S.C. § 1406(a) (improper venue).

**Response** – In his Response (Doc. 19), Petitioner argues that *Thuraissigiam II* involved an as-applied analysis and was limited to the facts of that case.  Petitioner argues that this case is distinguishable because, unlike Thuraissigiam, Petitioner does not only seek a new opportunity to apply for asylum, but also alleges his detention is unlawful and

Case 5:21-cv-00003-DCB-FKB    Document 21    Filed 12/16/20    Page 4 of 23

seeks a release from custody, and attacks not the constitutionality of the expedited removal process but the procedural due process afforded in that process in his case. He further argues the Court retains subject matter jurisdiction under the Administrative Procedures Act.

Petitioner argues that rather than the place of custody, the place where the underlying proceedings took place is the proper **venue**, arguing that *Padilla* and its "immediate custodian" rule do not apply to removal orders, citing *Armentero v. I.N.S.*, 340 F.3d 1058, 1071 (9th Cir. 2003)*, reh'g granted, opinion withdrawn*, 382 F.3d 1153 (9th Cir. 2004), *opinion after grant of reh'g*, 412 F.3d 1088 (9th Cir. 2005) (dismissing on basis of fugitive disentitlement). Petitioner argues that (despite its withdrawal) *Armenterro* remains persuasive law after *Rumsfeld*. Petitioner argues the *Padilla* Court's concerns about forum shopping do not apply. Finally, Petitioner argues that transfer would be a denial of due process by denying Petitioner his counsel of choice.

**<u>Reply</u>** – Respondents Reply (Doc. 20) that the factual distinctions raised by Petitioner do not avoid the holding of *Thuraissigiam II*, and the APA does not govern immigration proceedings, nor is habeas a proper forum to raise APA claims.

Respondents argue Petitioner does not avoid the jurisdictional rule of *Padilla* and improperly relies on venue authorities related to direct review, not habeas, and that Petitioner's venue analysis is flawed. Respondents argue that counsel need only seek admission in Southern District of Mississippi and enforcement of the rule supports *Padilla's* goal of preventing forum shopping. Respondents argue that Petitieorn's transfer was not an improper attempt to control the venue.

## II. SUBJECT MATTER JURISDICTION

Respondents argue that this Court lacks subject matter jurisdiction over Petitioner's claim, relying on the Supreme Court's recent decision in *Thuraissigiam II*. Petitioner opposes that conclusion. The undersigned observes that the scope of judicial jurisdiction after *Thuraissigiam II* is not as yet well settled, or widely addressed. The Ninth Circuit

- 4 -

1  has addressed the substance of the opinion only twice, and only once in a published

2  opinion.  *See Singh v. Barr*, - - - F.3d. - - -, 2020 WL 7234974 (9th Cir. Dec. 9, 2020);

3  *Jimenez, et al. v. Wolf,* 2020 WL 7230778, at *1 (9th Cir. Dec. 8, 2020).

4        Because the undersigned ultimately concludes that this matter is not properly

5  brought in the District of Arizona, the undersigned recommends leaving a determination

6  of the subject matter jurisdiction issue to the court before whom this case should have been

7  brought.

8

9                              **III.  PROPER COURT**

10       With regard to the proper court, the question is whether this case is properly before

11  the District of Arizona, or whether it belongs in the Southern District of Mississippi where

12  Petitioner was at the time of filing his Petition and where he remains in custody.   The

13  parties raise questions of venue, jurisdiction, proper respondents and personal jurisdiction.

14       Attempting to address these issues separately is complicated by the fact that even

15  the Supreme Court has disagreed on the division between these concepts in the habeas

16  realm.  *Compare Rumsfeld v. Padilla*, 542 U.S. 426, 426-451 (2004) (analyzing habeas

17  authority based on proper respondents (and personal jurisdiction over them) and territorial

18  jurisdiction) *with id.* at 451-455 (Kennedy, J., concurring) ("In my view, the question of

19  the proper location for a habeas petition is best understood as a question of personal

20  jurisdiction or venue.") *and id.* at 463 ("the question of the proper forum to determine the

21  legality of Padilla's incarceration is not one of federal subject-matter jurisdiction…Rather,

22  the question is one of venue").

23       There are, however, a few key principles that must determine the answer to the

24  question.

25

26  **A.  TRADITIONAL DISTRICT-OF-CONFINEMENT RULE**

27       In *Padilla*, the majority observed that under the habeas jurisdictional statute,

28  "[d]istrict courts are limited to granting habeas relief 'within their respective

jurisdictions.'" *Padilla*, 542 U.S. at 442 (quoting 28 U.S.C. § 2241(a)).  In turn the Court held that meeting this requirement was a matter of personal jurisdiction over the custodian. *Id.*  And, the Court observed that "in habeas challenges to present physical confinement-'core challenges'-the default rule is that the proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official." *Id.* at 435.  The Court found this mandated under the habeas statutes. "The federal habeas statute straightforwardly provides that the proper respondent to a habeas petition is 'the person who has custody over [the petitioner].' 28 U.S.C. § 2242; *see also* § 2243 ('The writ, or order to show cause shall be directed to the person having custody of the person detained')." 542 U.S. at 434.

Moreover, the *Padilla* Court explicitly rejected attempts to rely on long-arm service statutes to obtain the requisite "personal jurisdiction" over the respondent.  "*Braden* in no way authorizes district courts to employ long-arm statutes to gain jurisdiction over custodians who are outside of their territorial jurisdiction." *Padilla*, 542 U.S. at 445.

Put succinctly, the district court's habeas jurisdiction is limited to the district's territory, such jurisdiction is determined by personal jurisdiction over the respondent within such territory (without benefit of long-arm service), and the proper respondent is normally the local warden where the petitioner is detained.

The application of those principles has yielded the traditional "district of confinement rule." *Id.* at 443. "Accordingly, with respect to habeas petitions 'designed to relieve an individual from oppressive confinement,' the traditional rule has always been that the Great Writ is 'issuable only in the district of confinement.'" *Id.* at 442 (quoting *Carbo v. United States*, 364 U.S. 611, 618 (1961)).

Under this traditional rule, the proper district to hear this case is the Southern District of Mississippi where the proper respondent, the warden of the Mississippi detention facility where Petitioner was detained when he filed his Petition, is subject to personal jurisdiction, *i.e.* the district of confinement.

Nonetheless, Petitioner attempts to avoid this rule by arguing: (1) *Padilla* declined

to resolve whether the immediate custodian rule applied in the immigration context, and previous Ninth Circuit precedent (*Armenterro*) applied a different rule; (2) an immigration warden is not effectuating a judgment, merely providing housing services, and has no authority over a detainee's release; (3) concerns about forum shopping do not apply if the district where the alleged violation occurred exercises jurisdiction, as directed for immigration direct review and by traditional venue rules; and (4) due process concerns and Petitioner's right to counsel of his choosing.  As discussed hereinafter, none of these arguments justifies a departure from the district-of-confinement rule.

## B.  EXCEPTIONS TO THE TRADITIONAL RULE
### 1.  *Armentero* Neither Controlling Nor Persuasive

Petitioner urges the Court to apply the pre-*Padilla* holding of the Ninth Circuit in *Armenterro* rather than the rule adopted in *Padilla*.

The *Padilla* Court recognized that the district-of-confinement rule is only the "traditional rule."  In other cases, those not a challenge to current physical custody (*i.e.* non-core challenges), other rules apply.  The example cited by *Padilla* is *Braden v. 30th Judicial Circuit Court of Kentucky*, 410 U.S. 484, 493-94 (1973).  In *Braden*, the petitioner was incarcerated in Alabama, but challenged a detainer issued by Kentucky.  The Court held that in such an instance the habeas petition was properly filed in Kentucky (where the "warden" over the detainer was) rather than in Alabama where the petitioner was presently confined.[1]

Relying on *Braden, Armentero* reasoned:

> neither Supreme Court case law nor our own precedent states a clear path toward identifying the proper respondent or respondents in an immigration detainee's habeas petition. What we do glean from these cases and others is that, while a petitioner's immediate physical

---

[1] In light of *Padilla¸ Braden* stands for the unremarkable proposition that where the custodian and the petitioner are not in the same jurisdiction, then the jurisdiction where the custodian may be served (without benefit of long-arm service) is the only possible and proper jurisdiction.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

> custodian is typically a proper respondent in traditional habeas petitions, the statutory custodian requirement of 28 U.S.C. § 2241 is sufficiently flexible to permit the naming of respondents who are not immediate physical custodians if practicality, efficiency, and the interests of justice so demand.

340 F.3d at 1068.  Based on practical considerations unique to the immigration context (e.g. the routine interstate transfer of aliens between various state and local detention facilities who have no control over immigration decisions), the court concluded: "the most appropriate respondent to petitions brought by immigration detainees is the individual in charge of the national government agency under whose auspices the alien is detained," which at that time was determined to be the Attorney General and Secretary of the Department of Homeland Security.[2]  *Id.* at 1073.

But *Armentero* does not resolve this case for three reasons.

First, *Armentero* has been **withdrawn** and thus has no precedential value.  "It may not be cited as precedent by or to this court or any district court of the Ninth Circuit." *Armentero v. I.N.S.*, 382 F.3d 1153 (9th Cir. 2004), *opinion after grant of reh'g*, 412 F.3d 1088 (9th Cir. 2005).

Second, any persuasive value in *Armentero* is limited by the fact that it was **decided before *Padilla***.  Although *Padilla* declined to apply its precepts to the immigration context, it did reach conclusions antithetical to the expediencies relied on in *Armentero* (as discussed hereinafter).

Third, there is **no pre-*Padilla* / *Armentero* authority** that resolves the issue. *See Armentero*, 340 F.3d at 1068 (noting lack of clear precedent).

Thus, this Court is left to going where the Supreme Court declined to go, and where the Ninth Circuit has not gone since (or before) it's withdrawn opinion in *Armentero*: to apply the precepts of *Padilla* in the immigration context.

---

[2] *Armentero* relied in part upon the assertion that its rule avoided the risk that transfers or dismissals of habeas petitions would be required as detainees were transferred from jurisdiction to jurisdiction.  340 F.3d at 1069.  But this ignores the rule of *Endo* that jurisdiction is determined at the time of filing, and subsequent changes in custody cannot defeat that jurisdiction.  *See Padilla*, 542 U.S. at 440 (discussing *Ex parte Endo*, 323 U.S. 283 (1944)).

1
2

## 2. No Binding Precedent

3

***Padilla* Did not Decide** - While recognizing that the circuit courts have struggled

4

to apply habeas jurisdiction issues to immigration cases, the majority in *Padilla*

5

specifically declined to address the issue:

6

> In *Ahrens v. Clark*, 335 U.S. 188, 68 S.Ct. 1443, 92 L.Ed. 1898
> (1948), we left open the question whether the Attorney General is a
> proper respondent to a habeas petition filed by an alien detained
> pending deportation. *Id.*, at 189, 193, 68 S.Ct. 1443. The lower courts
> have divided on this question, with the majority applying the
> immediate custodian rule and holding that the Attorney General is not
> a proper respondent. *Compare Robledo-Gonzales v. Ashcroft*, 342
> F.3d 667 (C.A.7 2003) (Attorney General is not proper respondent);
> *Roman v. Ashcroft*, 340 F.3d 314 (C.A.6 2003) (same); *Vasquez v.
> Reno*, 233 F.3d 688 (C.A.1 2000) (same); *Yi v. Maugans*, 24 F.3d 500
> (C.A.3 1994) (same), with *Armentero v. INS*, 340 F.3d 1058 (C.A.9
> 2003) (Attorney General is proper respondent). The Second Circuit
> discussed the question at some length, but ultimately reserved
> judgment in *Henderson v. INS*, 157 F.3d 106 (1998). Because the
> issue is not before us today, we again decline to resolve it.

7
8
9
10
11
12
13

*Padilla*, 542 U.S. at 436, n. 8.

14

**Ninth Circuit Has Not Decided** - The parties cite to no post-*Padilla* Ninth Circuit

15

authority addressing the proper respondent in the immigration context, and the

16

undersigned has found none. *See Saravia v. Sessions,* 280 F. Supp. 3d 1168, 1184 (N.D.

17

Cal. 2017), *aff'd on other grounds sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137

18

(9th Cir. 2018) ("*Padilla* refused to decide who the proper respondent is in the immigration

19

detention context, and no controlling authority since has resolved the issue."); and

20

*Carmona v. Aitken*, 2015 WL 1737839, at *3 (N.D. Cal. Apr. 10, 2015) ("The Ninth

21

Circuit has not considered this issue since *Armentero*.").

22

Indeed, the only post-*Padilla* word from the Ninth Circuit is the dissent to the

23

ultimate dismissal in *Armentero* where Judge Berzon considered *Padilla* and nonetheless

24

argued that "[t]he most junior official who can release Armentero," in that instance, "the

25

Associate Commissioner for Enforcement" was the proper respondent, rather than the

26

warden or "field office director." 412 F.3d 1088 (9th Cir. 2005). In *Rodriguez v. Hayes*,

27

591 F.3d 1105, 1121 (9th Cir. 2010), the Ninth Circuit declined to resolve a dispute on the

28

1  proper application of *Padilla* to a class action brought by detainees challenging their

2  immigration detention.  *See also Ali v. Gonzales*, 421 F.3d 795, 796 (9th Cir. 2005), *as*

3  *amended on reh'g* (Oct. 20, 2005)

4  **Other Circuits Use Local Warden** - The only circuit courts found to have

5  addressed this issue after *Padilla* have concluded that the warden of the county detention

6  facility, rather than some other official was the proper respondent in an immigration

7  habeas case.  *See Kholyavskiy v. Achim*, 443 F.3d 946, 954 (7th Cir. 2006) (warden not

8  immigration official); *Gonzales-Corrales v. I.C.E.*, 522 F. App'x 619, 622 (11th Cir. 2013)

9  (same).  *Cf. Ali v. Brott*, 770 F. App'x 298, 299 n. 1 (8th Cir. 2019) (noting district court's

10 dismissal of respondents other than the custodial County Sheriff based on *Padilla*).

11 **No Persuasive Lower Court Decisions** - As recognized by Judge Corley in

12 *Carmona*, *supra*, the lower courts have reached different conclusions.  *Carmona*, 2015

13 WL 1737839.   Recent decisions have been split.  *See e.g. Lowther v. Hyun*, 2020 WL

14 6298065, at *3 (D. Haw. Oct. 27, 2020) (finding "no reason to abandon" the immediate

15 custodian rule, despite relocation to new facility); *Singh v. Wolf*, CV-20-0062-PHX-MTL-

16 JFM, 2020 WL 4455468 (D. Ariz. Mar. 31, 2020), *report and recommendation adopted*,

17 2020 WL 2611208 (D. Ariz. May 22, 2020).  Those that decline to apply *Padilla* rely on

18 rationales rejected herein.  *See Domingo v. Barr*, 2020 WL 5798238 (N.D. Cal. Sept. 29,

19 2020) (lack of custodian's authority over immigration decisions); *Long v. Baltazar*, No.

20 CV-18-00520-TUC-RM-EJM, 2020 WL 6162923 (D. Ariz. Sept. 17, 2020), report and

21 recommendation adopted, No. CV-18-00520-TUC-RM, 2020 WL 6161717 (D. Ariz. Oct.

22 21, 2020) ("mindful of avoiding a 'ping-pong' effect where the § 2241 petition is

23 transferred to a new court each time the petitioner is designated to a new institution")

24

25 **3.  Non-Core Exception Does Not Apply**

26 It is true that *Padilla* addressed only habeas cases involving "core challenges."  But

27 "core," as used in *Padilla*, was limited to the nature of the custody, not the nature of the

28 basis for the custody.  *Padilla* equated "core challenges" with ""habeas challenges to

present physical confinement," 542 U.S. at 435 and 444, "petitions challenging present physical confinement," *id.* at 443 and 445. *Braden* was not a "core" challenge because the petitioner did not challenge his present physical custody, but rather his future custody under a detainer. *Padilla* identified no other circumstance as being a non-core habeas and rejected calls to rely on principles of agency, *id.* at 445-447 (distinguishing *Strait v. Laird*, 406 U.S. 341 (1972)), or "exceptional, special, or unusual cases, *id.* at 448-449, or some purported misconduct in transferring the petitioner, *id.* at 448-449.    Here, Petitioner is plainly challenging his present physical custody, not some future custody.  Thus, *Padilla* requires the conclusion that the Petition asserts a "core" challenge and the traditional rule applies.

## 4.  No Other Basis to Deviate from Traditional Rule

### a.   Exceptions Are Possible

The next question is whether *Padilla* can be understood as leaving logical room for an exception for immigration cases.

In general, the courts have been protective of flexibility in habeas.

> Our recent decisions have reasoned from the premise that habeas corpus is not 'a static, narrow, formalistic remedy,' but one which must retain the 'ability to cut through barriers of form and procedural mazes.' 'The very nature of the writ demands that it be administered with the initiative and flexibility essential to insure that miscarriages of justice within its reach are surfaced and corrected.'
> Thus, we have consistently rejected interpretations of the habeas corpus statute that would suffocate the writ in stifling formalisms or hobble its effectiveness with the manacles of arcane and scholastic procedural requirements.

*Hensley v. Municipal Court, San Jose Milpitas Judicial Dist., Santa Clara Cty.*, 411 U.S. 345, 350 (1973).  But that does not mean that it does not have bounds.  Indeed, *Hensley* insisted upon enforcement of the custody requirement, while at the same time recognizing that release on parole, or bail or even recognizance met that requirement because of the attendant restrictions on freedom from such releases.

Thus, arguably, where habeas is applied to a unique circumstance, like *Braden*, where determining the territorial jurisdiction of the respondents is at issue, the traditional

rule may not apply. But apart from the practical concerns addressed hereinafter, there is nothing unique about the immigration context. The Petitioner is in the custody of someone, who must be subject to the territorial jurisdiction of the court hearing the habeas petition.

### b.  Appellate Venue Statutes Not Controlling

Petitioner argues that traditional venue considerations control, and that statutes governing judicial appeals from immigration proceedings establish Arizona (where the asylum proceedings occurred) as the proper venue. (Response, Doc. 19 at 14-15 (citing 8 U.S.C. § 1252(b)(2) and 8 U.S.C. § 1105a(a)(2)).) Petitioner cites *Trejo-Mejia v. Holder*, 593 F.3d 913, 914 (9th Cir. 2010), a case relying on § 1252(b)(2) in a judicial appeal from immigration decisions. (*Id.*)

But this habeas case is not a judicial appeal.

Moreover, the majority in *Padilla* rejected the contention that the district-of-confinement rule was merely a matter of venue, and instead cast it as a matter of identifying the proper respondent and the territorial jurisdiction of the habeas court.

Even if venue were a proper consideration, Petitioner fails to show that Arizona is any more convenient that Mississippi. He points to discussion in *Braden* about the availability of records and witnesses, and argues all the relevant administrative proceedings occurred in Arizona. (Response, Doc. 19 at 15.) In the era of FedEx, .pdf, email, and electronic court files there seems little practical difference between deciding this case in Arizona or Mississippi. Moreover, although the likelihood of an evidentiary hearing is remote, having Petitioner (as a detainee) appear in Arizona is likely to be far more inconvenient than having the relevant immigration authorities appear in Mississippi.

Petitioner also argues for venue based on the expertise of the District of Arizona in applying Ninth Circuit precedent. But Petitioner cites to no authority to show that a Southern District of Mississippi judge must apply Ninth Circuit law in evaluating the propriety of his custody. The undersigned has found none. Assuming that is so, the federal courts are regularly called upon to apply law other than circuit law. There seems

no reason to believe that the judges in the Southern District of Mississippi are hampered in doing so.

### c.   Pre-Petition Transfer Not an Exception

As recognized in *Padilla*, there are cases that hold that a district court's habeas jurisdiction is not defeated by transferring him out of the jurisdiction after his petition is filed.   542 U.S. at 440 (discussing *Ex parte Endo*, 323 U.S. 283 (1944)).   But here, Petitioner's transfer was well enough before his Petition that his transfer was referenced in the Petition.   (Petition, Doc. 1 at 2-3.)   Indeed, Respondents show it occurred on September 29, 2019, almost nine months before his Petition was filed.

In his dissent in *Padilla*, Justice Stevens called for recognizing an exception to the district-of-confinement rule based on the petitioner's transfer from New York to South Carolina just prior to the filing of the petition, and the direct involvement of the Secretary of Defense in designating the petitioner an "enemy combatant" and directing the transfer. 542 U.S. at 458-463.   But the *Padilla* majority explicitly rejected these arguments.   542 U.S. at 448-449.

Thus, the fact that Petitioner was transferred does not justify an exception to the traditional rule.

### d.   Ping-Ponging Not a Problem

A regular and recurring concern in the immigration context involves the variety of jurisdictions in which ICE maintains detention facilities, and its penchant for relocating aliens among them.   *See e.g. Long*, 2020 WL 6162923, *supra*.   But ultimately that will not defeat habeas jurisdiction attaching to whatever jurisdiction the alien was in at the time his habeas petition was filed.   The Government's transfer of Petitioner in this case has not defeat habeas jurisdiction.   It has simply resulted in the need to transfer his case.   Even if Petitioner had again been transferred, the jurisdiction of his habeas petition would have remained, under *Padilla*, in the Southern District of Mississippi.   *Padilla*, 542 U.S. at 440.

- 13 -

Thus, even a detainee being regularly relocated need only file *somewhere*, with the proper jurisdiction becoming fixed based on his location at the time of his filing.

### e.    Additional Relief and Controlling Executive Not Exceptions

It is true that Petitioner seeks relief beyond immediate release (*i.e.* relief from the denial of his asylum application) and the parties who can deliver that relief are not Warden Gillis. Here, "Petitioner asks the Court to: (1) determine that his expedited removal order violated his statutory, regulatory, and constitutional rights and, as a result, he is being detained in violation of the law; (2) vacate the expedited removal order; (3) order that he 'be provided a new, meaningful opportunity to apply for asylum and other relief from removal'; and (4) award reasonable costs and attorney's fees." (Order 6/16/20, Doc. 7 at 3. Nothing in the record suggests that Warden Gillis has authority to provide the relevant relief.

In *Carmona*, District Judge Corley rejected the lower court cases applying the immediate-custodian rule in immigration cases as failing to recognize the relief sought and the authority to grant the relief. *Carmona*, 2015 WL 1737839, at *3. A similar focus on relief was taken by *Armentero* and Judge Berzon in his dissent to the dismissal in *Armentero*. Instead of applying the district-of-confinement rule, Judge Corley adopted the approach from S*anchez–Penunuri v. Longshore*, 7 F.Supp.3d 1136 (D.Colo. 2013), that "distinguished habeas petitions in the immigration context as a request for discretionary relief or an opportunity for the government to exercise its discretion in consideration of a removal decision rather than a request for immediate release." *Id.* at *4. Because the Petitioner in *Carmona* sought relief from an immigration decision (rather than release from custody), Judge Corley reasoned the proper respondent would be the Attorney General and DHS Secretary, who shared authority to grant the requested relief.

Similarly, in *Saravia v. Sessions*, Judge Chhabria considered the proper respondent for an immigration detainee detained in a private facility, and concluded that the warden of such an institution was not the proper respondent, but rather the "federal official most

directly responsible for overseeing that contract facility." 280 F. Supp. 3d at 1185.  Judge Chhabria worried that the private facility wardens, *i.e.* "other-than-federal actors" were "poorly situated to defend federal interests." *Id.* at 1186.

The undersigned finds the reasoning of these cases unpersuasive for the following reasons.

### (1).  Warden Seldom Has Executive Authority Over Relief

First, in virtually every habeas proceeding, the custodian is not the person or entity with the capacity to afford relief beyond physical release.[3]

For example, Rule 2(a) of the Rules Governing Section 2254 cases provides: "the petition must name as respondent the state officer who has custody."  And the Advisory Committee Notes to the 1976 adoption of Rule 2(a) observe that the "proper person to be served in the usual case is either the warden of the institution in which the petitioner is incarcerated or the chief officer in charge of state penal institutions."  And yet, in a state prisoner habeas petition, a common form of relief is release conditioned on failure to retry the defendant, or otherwise cure the constitutional errors.  But the warden of the prison or head of the department of corrections generally has no ability to retry a defendant, or re-extend a plea agreement, or resentence the defendant.

Thus, power to issue such alternative or additional requested relief cannot be said to be the touchstone for identifying the proper respondent.   Indeed, the Seventh Circuit has cast such arguments as "conflat[ing] the person responsible for authorizing custody with the person responsible for maintaining custody. Only the latter is a proper respondent." *al-Marri v. Rumsfeld*, 360 F.3d 707, 711 (7th Cir. 2004).

### (2).  Warden is Usually Merely an Agent

Second, even in traditional habeas cases (challenges to imprisonment based on an unconstitutional conviction) the warden is merely an agent of those capable of affording

---

[3] An exception would be situations where a warden is holding a prisoner past the clear expiration of his sentence.  In such cases, the prosecuting government may have no interest in continued detention, and thus the fight is solely between the petitioner and the warden.

relief beyond release. Indeed, in practice, when a warden is served with a habeas petition, the warden calls upon the parties who have tasked him with preserving custody (whether otherwise named or not) to proffer a defense. Few wardens ever assert a personal (or even official) interest in keeping a given petitioner in custody. For example, they have no direct interest in preserving a criminal judgment from attack, only in complying with it.

There is no difference in the immigration context. If the warden with custody is brought into the proceeding, he can turn to those who have given him custody to appear on his behalf to defend his custody, just as wardens in criminal habeas cases do. The locale of such persons, whether Mississippi, Arizona, or the District of Columbia, poses no barrier to proceeding. Nor is the petitioner nor the court left to trying to divine the interested parties. Rather, the interested parties are left dependent upon their agent, the warden, to provide them notice of the proceeding and an opportunity to defend.

### (3). <u>Nature of Habeas as Challenge to Custody</u>

Third, habeas by nature is not a means of review of judicial or administrative proceedings, but a challenge to custody. It is for this reason that Petitioner's reliance on case law on the proper forum for such review is inappropriate.

Instead, habeas is focused on determining the propriety of custody. "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and that the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). "[The great writ's] province, shaped to guarantee the most fundamental of all rights, is to provide an effective and speedy instrument by which judicial inquiry may be had into the legality of the detention of a person." *Carafas v. LaVallee*, 391 U.S. 234, 238 (1968). It is for this reason that being in custody is a prerequisite to bringing a habeas petition. *See Hensley v. Mun. Court, San Jose Milpitas Judicial Dist., Santa Clara Cty., California*, 411 U.S. 345, 351 (1973) ("The custody requirement of the habeas corpus statute is designed to preserve the writ of habeas corpus as a remedy for severe restraints on individual liberty.").

In the end, the ultimate relief in every habeas corpus is, by definition, to deliver the

body.  "Habeas lies to enforce the right of personal liberty; when that right is denied and a person confined, the federal court has the power to release him. Indeed, it has no other power; it cannot revise the state court judgment; it can act only on the body of the petitioner."  *Fay v. Noia*, 372 U.S. 391, 430–31 (1963), *overruled on other grounds by Wainwright v. Sykes*, 433 U.S. 72 (1977), and *abrogated on other grounds by Coleman v. Thompson*, 501 U.S. 722 (1991).  *See* Brian R. Means, *Wide Discretion in Choosing a Remedy*, Federal Habeas Manual § 13:5 (May 2019).

That is not to suggest that habeas remedies are limited to release.  They are not.  In *Boumediene v. Bush*, 553 U.S. 723, 779 (2008), in deciding whether an alternative procedure amounted to suspension of the writ, the Court opined: "And the habeas court must have the power to order the conditional release of an individual unlawfully detained—though release need not be the exclusive remedy and is not the appropriate one in every case in which the writ is granted."  This might be read to suggest that release from custody is only one form of relief, as opposed to the chief form.  But the Court cited no cases failing to grant release in some fashion.  The Court made the following reference: "*But see Chessman v. Teets*, 354 U.S. 156, 165–166, 77 S.Ct. 1127, 1 L.Ed.2d 1253 (1957) (remanding in a habeas case for retrial within a 'reasonable time')."  553 U.S. at 779.  But the relief ordered in *Chessman* was "to allow California a reasonable time within which to take further proceedings not inconsistent with this opinion, failing which the petitioner shall be discharged."  *Chessman*, 354 U.S. at 166.

Warden Gillis, just as any other warden with physical custody, can provide that relief from custody.  While, in the criminal context, the habeas court may condition release on other relief, *i.e.* retrial, etc., the habeas court cannot simply function as an appellate court and rewrite the decisions in the case.  Similarly, a court hearing this case might, for example, condition release on reopening the asylum procedures.

It has been suggested that wardens delivering persons in such instances would be acting in violation of law unless authorized by their principal.  But such arguments ignore the co-equal nature of the judicial branch, and its power to resolve the legal validity of

detention.   A prison warden releasing a petitioner upon order is no less in theoretical violation of the laws directing the imprisonment of the convict, than would be Warden Gillis in releasing Petitioner.   But laws are not equal.   In the case of federal habeas petitions, the courts resolve whether higher laws, *i.e.* the United States Constitution, or preemptive federal law, or different controlling laws call for release.

Thus, focusing on the alternative remedies ignores the unique nature of the habeas remedy and renders it merely a substitute for other forms of judicial review.

### f.   Loss of Counsel

Finally, Petitioner complains of the potential that he will lose access to his counsel of choice if jurisdiction is transferred, citing concerns in *Armentero* about limited availability of counsel (particularly in rural areas) where detention facilities are located, and restrictive *pro hac vice* rules.   Petitioner complains that personal consultation with current counsel has been rendered impracticable, but concedes that "telephone access is presumably available."   Petitioner also points to his counsel's expertise with Ninth Circuit law and this case.  (Response, Doc. 19 at 17-19 and n. 2 (quoting *Armentero*, 340 F.3d at 1069.)[4]   Respondents counter that counsel can simply seek admission in the Southern District of Mississippi.  (Reply, Doc. 20 at 8-9.)

*Padilla* rejected the contention that such case-specific concerns justify varying from the district of confinement rule, and expressed concern that if such matters justified exceptions "district courts would be consigned to making *ad hoc* determinations as to whether the circumstances of a given case are 'exceptional,' 'special,' or 'unusual' enough to require departure from the jurisdictional rules this Court has consistently applied. We do not think Congress intended such a result."  542 U.S. at 449.

---

[4] The undersigned suspects that the law of supply and demand would produce potential counsel in such areas.  Indeed, Petitioner's counsel hails from Scottsdale, Arizona, not Eloy, Arizona where Petitioner was previously detained.  Nor does the undersigned find immigration law (or even Ninth Circuit immigration law) so inscrutable that Mississippi counsel would be unable to represent Petitioner.

- 18 -

1          **g.   Forum Shopping**

2          Petitioner argues that forum shopping concerns do not apply because Petitioner

3    does not seek habeas jurisdiction in some hand selected forum, but the locale where the

4    administrative immigration proceedings occurred.  (Response, Doc. 19 at 14-17.)

5          Respondents simply parrot the counter-argument that Petitioner is forum-shopping.

6    (Motion, Doc. 18 at 8-9.)

7          *Padilla* considered, and was concerned about "forum shopping by habeas

8    petitioners." 542 U.S. at 447.  The majority decision did not, however, address the reverse,

9    even though the Justice Stevens' dissent plainly raised the specter that it was the

10   Government that was engaging in forum shopping by relocating Padilla to South Carolina.

11   *Id.* at 463-464.

12         The concerns of forum shopping, however, are not to prevent parties from

13   considering the law of various forums in deciding actions to be taken.  (If it did, Delaware's

14   trade in corporate headquarters, Florida's trade in income-tax-avoiding retirees, and the

15   applicable-law sections in contracts would all evaporate.)  Rather, it is concern over parties

16   taking actions in the initiation or course of litigation to obtain advantage by shifting

17   jurisdiction from its natural locale to another.  *See Padilla*, 542 U.S. at 447 (when

18   petitioners name "a high-level supervisory official as respondent and then sue that person

19   wherever he is amenable to long-arm jurisdiction"); *Ferens v. John Deere Co.*, 494 U.S.

20   516, 527 (1990) ("obtaining a more favorable law by selecting a forum through a transfer

21   of venue" in diversity cases).  *See also Forum Shopping Reconsidered*, 103 Harv. L. Rev.

22   1677, at text surrounding n. 1 (1990) ("Forum shopping has been defined as a litigant's

23   attempt 'to have his action tried in a particular court or jurisdiction where he feels he will

24   receive the most favorable judgment or verdict.'") (quoting Black's Law Dictionary 590

25   (5th ed. 1979)).  *But see Allstate Ins. Co. v. Hague*, 449 U.S. 302, 319 (1981) (finding

26   sufficient contact with Minnesota to justify application of its law  where there was "no

27   suggestion that Mrs. Hague moved to Minnesota in anticipation of this litigation or for the

28   purpose of finding a legal climate especially hospitable to her claim").

Here, Petitioner may have been considering or even preparing, and the Government may have been expecting, a habeas petition when Petitioner was transferred.  And, the Government's decision to transfer and choice of locales may have been driven by a desire to benefit from more desirable circuit law.  But that does not render such pre-litigation actions "forum shopping."

Similarly, Petitioner's approach is not a matter of forum shopping, but argument for a different rule, albeit an insupportable one, *i.e.* the district from which the disputed order emanated.

In sum, *Padilla's* rule avoids the concerns of forum shopping.

## C.  PROPER JURISDICTION

Based on the foregoing, the undersigned concludes that the district-of-confinement rule applies and jurisdiction over the Petition lies in the Southern District of Mississippi (where Warden Gillis may be served without resort to long-arm service), not this District.

## D.  APPROPRIATE RELIEF

Respondents seek either a dismissal or transfer of venue under 28 U.S.C. § 1406(a), which provides: "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."  That statue is limited to transfers based on improper venue, not a lack of jurisdiction.

In *Padilla*, the Court arguably cast the issue as one of jurisdiction. The Court concluded that the base commander in South Carolina was the custodian and proper respondent.  It then reasoned that the New York court had "*jurisdiction* over Padilla's habeas petition…only if it has *jurisdiction* over Commander Marr."  542 U.S. at 442 (emphasis added).  It concluded: "The plain language of the habeas statute thus confirms the general rule that for core habeas petitions challenging present physical confinement, *jurisdiction* lies in only one district: the district of confinement."  *Id.* at 443 (emphasis

1    added).   Conversely, in his concurrence, Justice Kennedy (joined by Justice O'Connor)

2    wrote to state his "understanding of how the statute should be interpreted in light of the

3    Court's holding."   *Id.* at 451.   He argued that the rules applied by the Court were "not

4    jurisdictional in the sense of a limitation on subject-matter jurisdiction," but instead "a

5    question of personal jurisdiction or venue."   *Id.*   The majority opinion in *Padilla* did not

6    elucidate what it meant by *jurisdiction* over the petition or that *jurisdiction* only lies in the

7    district of confinement.   Nor did the majority opinion respond to Justice Kennedy's

8    argument.

9         Despite this lack of clarity, Respondents nonetheless concede the applicability of §

10   1406(a).

11        And, in *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466 (1962), the Court held that a

12   defect in venue could be solved by transfer under this provision "whether the court in

13   which it was filed had personal jurisdiction over the defendants or not."

14        Even so, assuming *arguendo* that *Padilla* must be read as making the removal of

15   this case from the District of Arizona's territorial jurisdiction as a matter of subject matter

16   jurisdiction, dismissal is not the only option.   Instead, § 1631 provides that if a "court finds

17   that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer

18   such action or appeal to any other such court…in which the action or appeal could have

19   been brought at the time it was filed or noticed."

20        Thus, whether *Padilla* is read as creating a rule of subject matter jurisdiction,

21   personal jurisdiction, or venue, it is within the authority of this Court to transfer rather than

22   dismiss.

23        In both instances, the standard for transfer is the same: "in the interest of justice,"

24   28 U.S.C. § 1406(a); 28 U.S.C. § 1631(a).   Here neither Respondents nor Petitioner proffer

25   any reason why transfer (at least as opposed to dismissal) is not in the interests of justice.

26   A transfer will save time and resources invested to date in filing, briefing, and (at least

27   arguably) service.

28        Accordingly, whether under § 1406(a) or § 1631, transfer is the appropriate result.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### E.  INTERLOCUTORY ORDERS

This Court has issued a temporary stay of removal.  The parties do not address what effect, if any, a transfer should have on such orders.

If this transfer is deemed to be a change of venue under § 1406(a), any interlocutory orders would clearly remain in place.  "When an action is transferred, it remains in the posture it was in and all further proceedings in the action merely are referred to and determined by the transferee tribunal. This leaves in place whatever already has been done in the transferor court."  Wright & Miller, *Effect of Transfer*, 15 Fed. Prac. & Proc. Juris. § 3846 (4th ed.).

The undersigned has located no authority addressing the effect of § 1631 on existing orders of the transferor court.  But the statute itself suggests that the same result should apply, directing "the action or appeal shall proceed as if it had been filed in or noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court from which it is transferred."  28 U.S.C. § 1631.

Accordingly, the Court need not terminate the existing orders on notices, etc. or any stay of removal which might be issued.

## IV.  RECOMMENDATION

**IT IS THEREFORE RECOMMENDED:**

(A)  The Motion to Dismiss/Transfer (Doc. 18) be **GRANTED** as provided herein.

(B)  Petitioner's Petition for Writ of Habeas Corpus (Doc. 1) be **TRANSFERRED** to the United States District Court for the Southern District of Mississippi.

## V.  EFFECT OF RECOMMENDATION

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to *Rule 4(a)(1), Federal Rules of Appellate Procedure*, should not be filed until entry of the district court's judgment.

1       However, pursuant to *Rule 72(b), Federal Rules of Civil Procedure,* the parties shall

2 have fourteen (14) days from the date of service of a copy of this recommendation within

3 which to file specific written objections with the Court. Thereafter, the parties have

4 fourteen (14) days within which to file a response to the objections. Failure to timely file

5 objections to any findings or recommendations of the Magistrate Judge will be considered

6 a waiver of a party's right to *de novo* consideration of the issues, *see United States v.*

7 *Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003)(*en banc*), and will constitute a waiver

8 of a party's right to appellate review of the findings of fact in an order or judgment entered

9 pursuant to the recommendation of the Magistrate Judge, *Robbins v. Carey*, 481 F.3d 1143,

10 1146-47 (9th Cir. 2007).

11       In addition, the parties are cautioned Local Civil Rule 7.2(e)(3) provides that

12 "[u]nless otherwise permitted by the Court, an objection to a Report and Recommendation

13 issued by a Magistrate Judge shall not exceed ten (10) pages."

14

15    Dated: December 15, 2020

16    20-1169r RR 20 12 09 on HC.docx

                              James F. Metcalf
                       United States Magistrate Judge

17

18

19

20

21

22

23

24

25

26

27

28